IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YOLANDA BOWMAN, *

Plaintiff, *

v. * Civil Action No. RDB-15-01282

BALTIMORE CITY BOARD OF SCHOOL COMMISSIONERS, *

Defendant. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Yolanda Bowman ("Plaintiff" or "Bowman") has brought this action against Defendant Baltimore City Board of School Commissioners ("Defendant" or "the Board"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII" and/or "Count One") and Title VI of the Civil Rights Act of 1964, §§ 42 U.S.C. 2000d-7 *et seq*. ("Title VI" and/or "Count Two"). Currently pending before this Court is Defendant's Motion to Dismiss, or in the alternative for Summary Judgment (ECF No. 4). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated herein, Defendant's Motion to Dismiss, or in the alternative for Summary Judgment (ECF No. 4), construed as a Motion to Dismiss, is DENIED.

BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Yolanda Bowman ("Bowman")

alleges the following:

In October 2012, Bowman was hired to work as a fifth grade language arts teacher within the Baltimore City Public School system. Compl. ¶ 10, ECF No. 1. Bowman is an African American woman in her forties and is a certified special education teacher with more than twenty years of teaching experience. *Id.* ¶¶ 7-8. She was initially assigned to William Paca Elementary School, where she received a "satisfactory" rating on her annual job performance evaluation for the 2012-2013 school year. *Id.* ¶¶ 11-12.[1]

In August 2013, Bowman was transferred to Mary E. Rodman Elementary School ("Rodman") where she again taught fifth grade. *Id.* ¶¶ 13-14. Rodman is within the Baltimore City Public School system and encompasses students from Pre-Kindergarten to fifth grade. *Id.* ¶¶ 14, 17. Bowman alleges that in 2014, approximately 240 students enrolled at Rodman and the student body was "approximately one hundred percent" African American. *Id.* ¶¶ 17-18. Bowman also contends that the teachers at Rodman consisted of both African American and Caucasian individuals. *Id.* ¶ 19.

During the 2013-2014 school year, Bowman was a Team Leader and assisted other teachers with school-related tasks. *Id.* ¶¶ 20-21. Bowman also led the Performing Arts Club, which organized student performances during that school year. *Id.* ¶ 27. On her 2013-2014 annual performance evaluation, Bowman received an "effective" rating. *Id.* ¶ 25. Bowman asserts that Rodman's Principal Michelle Broom ("Broom"), who is African American, sent teachers to her room to observe her teaching techniques, and brought the State Superintendent to Bowman's classroom for this purpose. *Id.* ¶¶ 22, 24.

[1] The annual performance review scales are "high effective," "effective," "satisfactory," and "ineffective." Compl. ¶ 26.

At the beginning of the 2014-2015 school year, Bowman contends that Broom asked her to organize student activities. *Id.* ¶ 28. Bowman volunteered to run the After School Club, career program ("CAP Club"), Performing Arts Club, Student Counsel, Prison Pen Pal program, and School and Family Counsel. *Id.* ¶ 29. Bowman alleges that she discussed these activities with Broom, and in August 2014, Broom encouraged her to get the activities started. *Id.* ¶¶ 30-31. Bowman was again a Team Leader during this school year and alleges that Broom continued to send teachers to her classroom to observe her teaching techniques. *Id.* ¶¶ 32-33.

At the beginning of the academic year, Bowman states that she noticed Rodman's seven Caucasian teachers had significantly fewer students than the three African American teachers. *Id.* ¶ 34. Bowman alleges that the African American teachers were assigned forty or more students, while the Caucasian teachers generally had fewer than twenty-five students. *Id.* ¶¶ 35-36. Bowman, along with the other African American teachers, allegedly complained about having too many students assigned to their classes. *Id.* ¶ 37. Bowman complained to school administrators during the weekly team meetings, including to the Staff Developer, Michelle Goosby ("Goosby"). *Id.* ¶ 38. Bowman felt the class size was too large to control and detrimental to the students. *Id.* ¶¶ 39-42.

Bowman also alleges that Broom engaged in discriminatory behavior toward African American employees, faculty, and staff at Rodman. *Id.* ¶¶ 43-46. Bowman contends that Broom made disparaging remarks about African American employees at staff meetings and criticized them in public. *Id.* ¶ 44. Furthermore, Bowman alleges that Broom did not engage in this behavior towards Rodman's Caucasian teachers. *Id.* ¶ 45. Other African American

teachers allegedly complained to Bowman about Broom's discriminatory treatment. *Id.* ¶ 45.

During September 2014, Bowman again complained to Broom about her large classroom size, stating, "It is not fair that every other day I am getting observed with so many students." *Id.* ¶¶ 47-48. On October 4, 2014, Bowman sent an e-mail to Broom stating that her classroom size was too big. *Id.* ¶ 49. Bowman alleges that Broom either did not respond to her complaints or told Bowman that "you can handle it." *Id.* ¶ 50. Bowman also complained to Baltimore City Public Schools' Support Networks Office, but her class size was not reduced. *Id.* ¶¶ 51-52.

On October 13, 2014, Broom assigned another teacher to the fourth grade, which was previously assigned to Kristi Tousignant ("Tousignant"), a Caucasian. *Id.* ¶ 53. Bowman alleges that the addition of a new teacher decreased Tousignant's workload by half, but similar action was not taken to decrease Bowman's workload. *Id.* ¶ 54-55. Later that day, Bowman complained to Broom that "Departmentalization wasn't even considered to decrease my load. Why was Tousignant given relief? This is discrimination." *Id.* ¶ 56. Bowman alleges that Broom retaliated against her complaints by not responding to Bowman, becoming antagonistic, and questioning her performance without providing specific criticisms. *Id.* ¶¶ 57-60. At the end of October 2014, Bowman claims that Broom discontinued sending teachers to Bowman's class to observe her teaching techniques and re-assigned her Team Leader duties to other teachers. *Id.* ¶¶ 62-63. Bowman continued to have forty students in her classroom throughout the remainder of the academic year. *Id.* ¶ 64.

On January 5, 2015, Bowman was placed on administrative leave, and then on February 5, 2015, suspended without pay for alleged misconduct. *Id.* ¶¶ 65-66. Bowman filed

a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 6. On February 5, 2015, the EEOC dismissed the charge and instead, issued a Notice of Right to Sue Letter. *Id.* On May 1, 2015, the Board did not renew her teaching contract.[2]

Plaintiff has filed the subject Complaint (ECF No. 1) claiming retaliation in violation of Title VI and Title VII of the Civil Rights Act of 1964. Specifically, Bowman alleges that the Board engaged in discriminatory behavior by assigning significantly fewer students to Caucasian teachers than African American teachers. The Board allegedly retaliated against her after she complained about the purported racial discrimination by removing her Team Leader duties, questioning her job performance, maintaining the same number of students in her class, suspending Bowman without pay for alleged misconduct, and ultimately declining to renew her employment contract.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

[2] This Court notes that Plaintiff did not include this information in her Complaint. In Defendant's Motion to Dismiss, the Board clarifies that Plaintiff's employment contract ultimately was not renewed. Mot. to Dismiss, 1-2, ECF No. 4. The Plaintiff confirms that her employment contract was not renewed in her affidavit filed with Plaintiff's Opposition to Defendant's Motion to Dismiss. Plaintiff's Aff. ¶ 46, ECF No. 5-1.

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In the employment discrimination context, this pleading standard should not be "onerous." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Supreme Court has indicated that an employment discrimination plaintiff need not plead particular facts conclusively satisfying each element of a prima facie case. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).[3] *Swierkiewicz*, however, did not abrogate the requirement that the plaintiff allege "facts *sufficient* to state *all* the elements of her claim." *Bass*, 324 F.3d at 765 (emphasis added); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that *Swierkiewicz* does not nullify the heightened pleading requirements of *Twombly* and *Iqbal*); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)).

Even with the degree of flexibility arguably given to employment discrimination plaintiffs, the court must consider whether plaintiff's complaint has met the plausibility requirement of *Twombly* and *Iqbal*. *See Miller v. Carolinas Healthcare System*, 561 F. App'x 239, 241 (4th Cir. 2014) (explaining that, in the Fourth Circuit, "*Swierkiewicz* left untouched the burden of a plaintiff to allege facts sufficient to state all elements of her claim." (internal

[3] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination.'" (citations omitted)).

quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

Plaintiff has alleged discriminatory treatment based on race, contending Caucasian teachers at Rodman were assigned fewer students to their classes than the African American teachers. She claims that the Board terminated her employment as retaliation for complaining about the classroom sizes and alleged discriminatory treatment. In moving to dismiss, the Board argues that Bowman fails to establish a prima facie case of retaliation. Specifically, the Board contends that Bowman does not allege that she engaged in any protected activity, nor was there causal proximity between the claimed protected activity and adverse employment action.

Title VII provides that an employer may not "discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, an employer may not discriminate against an employee who "has opposed any . . . unlawful employment practice" covered by the statute.[4] 42 U.S.C. § 2000e-3(a). Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin,

[4] To state a claim of retaliation under Title VII, a plaintiff first must exhaust administrative remedies. In this case, the Plaintiff filed a timely complaint with the EEOC, received a right to sue letter, and thus, exhausted the requisite administrative remedies.

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d-7. A recipient of this federal funding shall not discriminate "against any individual . . . because he has made a complaint" regarding unlawful employment activity. 34 CFR 100.7(e). In *Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003), the United States Court of Appeals for the Fourth Circuit held that Title VI prohibits intentional discrimination and includes a private right of action for retaliation claims.

Title VII and Title VI claims of retaliation are examined under the same standard. *Howerton v. Board of Educ. of Prince George's Cty.*, CIV. A. No. TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015) (citing *Peters*, 327 F.3d at 307). To state a claim of retaliation under Title VII or Title VI, the plaintiff must show that "(1) she engaged in protected activity: (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). Although a claim for retaliation under Title VII or Title VI must satisfy the same three elements, Title VI attaches an additional requirement. Under Title VI, a plaintiff must show that "the program or activity under which a plaintiff was allegedly subjected to discrimination received federal financial assistance. Federal funding is deemed an element of the cause of action." *Rogers v. Bd. of Educ. of Prince George's Cty.*, 859 F.Supp. 2d 742, 750 (D. Md. 2012). For purposes of a motion to dismiss, the plaintiff must allege receipt of federal funds by the defendant, and that this funding was received for the "express purpose of creating jobs and maintaining existing ones." *Id.* at 752. In this case, Plaintiff adequately

alleges that Baltimore City Public Schools receive federal stimulus funds through the American Recovery and Reinvestment Act of 2009 for the "expressed purpose of creating jobs and maintaining existing ones." Compl. ¶ 2.[5]

**A. Protected Activity**

The Board contends that Bowman did not sufficiently allege that she engaged in a protected activity as required under Title VI and VII. Specifically, the Board alleges that Bowman never complained to the Board or to any employee of the Board that the difference in classroom size was due to race.

Protected activity includes an employee's opposition to what he or she believes is an unlawful employment practice. This opposition encompasses "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998). The Fourth Circuit noted that while individual acts may be scrutinized to determine "their nature, purpose, and nexus to the alleged objective," the plaintiff's conduct must be examined "*as a whole*." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). This inquiry first looks to whether the employee "communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 276 (2009). If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is "actually unlawful under Title VII" or

[5] The Board qualifies as a "local educational agency" under 28 U.S.C. § 7801(26)(A), which constitutes a "program or activity" under Title VI, 42 U.S.C. § 2000d–4a(2)(B).

that the employee "reasonably believes to be unlawful." *Boyer–Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 282 (4th Cir. 2015).

It is the first element of this inquiry, whether Bowman communicated her belief to the Board, that requires further examination.[6] General complaints of unfair treatment are not protected activity. *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 587 (D. Md. 2012); *accord Harris v. Md. House of Corrections*, 209 F. Supp. 2d 565, 570 (D. Md. 2002). However, where the employer understood or should have understood that the plaintiff opposed an unlawful practice, that opposition is protected activity. *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012). To determine whether an employer should have understood the complaint to constitute a protected activity, a court must consider whether the employer could have understood the complaint in the context in which it was made. *Id.* (holding that the employee's verbal complaint of being "targeted" should have conveyed to the employer a concern of racial discrimination); *Okoli v. City of Baltimore*, 648 F.3d 216, 223-224 (4th Cir. 2011) (although the employee did not explicitly mention sexual harassment or convey details of the incident, the use of the word "harassment" was enough to convey to the employer that her complaint "likely encompassed sexual harassment").

In this case, Bowman alleges that she repeatedly complained about her large classroom size to both Broom and school administrators. Admittedly, Bowman's initial complaints did not allege racially discriminatory conduct. Rather, these initial complaints related only to general unfair treatment resulting from the large classroom size. *See* Compl.

---

[6] The Plaintiff satisfies the second element of this inquiry. She alleges a quantifiable difference in classroom sizes and prior discriminatory treatment of African American employees at Rodman to establish that she reasonably believed classroom sizes were determined by race, and hence unlawful.

¶¶ 37-38, 47-51. As such, these initial complaints, alone, are not sufficient to allege that she communicated her belief to the Board that racially discriminatory practices were occurring at Rodman.

Nevertheless, on October 13, 2014, Bowman alleges that she specifically complained to Broom about the discriminatory treatment in regards to classroom sizes. Compl. ¶¶ 53-56. Bowman allegedly expressed to Broom her belief that the addition of a new teacher to the fourth grade class lightened the workload of Tousignant, a Caucasian teacher. *Id.* Bowman then complained to Broom that "Departmentalization wasn't even considered to decrease my load. Why was Tousignant was given relief? This is discrimination." *Id.* From this context, Broom reasonably should have been aware that Bowman's complaint noted a distinction in treatment between Tousignant, a Caucasian teacher, and Bowman, an African American teacher. Although, Bowman did not explicitly state it was racial discrimination, she did not have to be so explicit when the context clearly conveyed the purported racial impetus. Bowman has thus sufficiently alleged that she engaged in a protected activity.[7]

**B. Adverse Employment Action**

The Board does not dispute it took adverse employment action against Bowman. Bowman was placed on administrative leave in January 2015 and, on February 5, 2015, she was suspended without pay for alleged misconduct. Compl. ¶¶ 65, 66, 69.

[7] Under Title VI, the standard for protected activity is slightly different than that of Title VII. Title VI asks (1) whether the plaintiff subjectively, in good faith, believed that the employer engaged in a practice violative of Section 601 (42 U.S.C. § 2000d); and (2) whether this belief was objectively reasonable in light of the facts. *Peters*, 327 F.3d at 320—21. In this case, Plaintiff has also satisfied these requirements and sufficiently alleged that she engaged in a protected activity under Title VI.

**C. Causal Link**

Even assuming that Plaintiff sufficiently alleged protected activity, Defendant argues that she has failed to show a causal nexus between the protected activity and the adverse employment action.[8] Although a plaintiff may not conclusorily assert the existence of a "causal connection," the presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). If the employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (explaining that the employer must know the employee engaged in protected activity as a prerequisite to establishing a causal connection). The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascaul v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3rd Cir. 2000)).

[8] In moving to dismiss, Defendant describes an alleged incident of serious misconduct by Plaintiff where she had her students engage in an unauthorized pen-pal program with an incarcerated person. Mot. to Dismiss, 1-2, ECF No. 4. Defendant alleges that Plaintiff's conduct violated the employee handbook and constitutes a legitimate, non-discriminatory basis for the termination of her employment. Any discussion of Defendant's proffered legitimate reasons for termination, however, is reserved for summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing a burden shifting framework for Title VII claims); *Swierkiewicz*, 534 U.S. at 510—11 (explaining that the McDonnell Douglas test is appropriately used on summary judgment). At the motion to dismiss stage, however, it is the Plaintiff's complaint that controls.

Approximately three months passed between Bowman's direct complaint to Broom alleging discriminatory treatment on October 13, 2014 and the placing of Bowman on administrative leave in January 2015. Yet, certain intervening events may demonstrate plausible retaliatory animus. For example, Bowman claims that she was relieved of Team Leader duties, other teachers were no longer sent to observe her room, and she allegedly received negative comments about her job performance. Each adverse action was plausibly in retaliation for her October 13th complaint to Broom. Accordingly, Bowman has alleged facts sufficient to show a causal link between her protected activity and the Board's adverse employment action.

In sum, Plaintiff's Complaint sufficiently alleges *prima facie* claims of retaliation under both Title VI and Title VII. At this early stage in the proceedings, she need not prove her claims, but instead only allege a plausible claim for relief. As such, Defendant's Motion must be denied.

## CONCLUSION

For the reasons stated above, Defendant Baltimore City Board of School Commissioner's Motion to Dismiss, or in the in the alternative for Summary Judgment (ECF No. 4), construed as a Motion to Dismiss is DENIED.

A separate Order follows.

Dated: March 24, 2016

___/s/___________________________
Richard D. Bennett
United States District Judge