# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

YOLANDA BOWMAN,

    Plaintiff,

v.                                       Civil Action No. RDB-15-1282

BALTIMORE CITY BOARD
OF SCHOOL COMMISSIONERS,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Yolanda Bowman ("plaintiff" or "Bowman"), an African-American woman, has filed this action against defendant the Baltimore City Board of School Commissioners ("defendant" or "the Board"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., ("Title VII") and Title VI of the Civil Rights Act of 1964, §§ 42 U.S.C. 2000d-7, *et seq.,* ("Title VI"). Plaintiff was suspended without pay and, later, not re-hired as a teacher at the Mary E. Rodman Elementary School in Baltimore, Maryland, after she failed to obtain parental consent forms from all students who participated in a "prison pen pal program" through which the children corresponded with Bowman's husband, an incarcerated felon. The failure to obtain these consent forms generated letters of complaint from many parents of her students. Nevertheless, Bowman alleges that she was suspended not as a result of the prison pen pal program, but, instead, in

1

retaliation for her having complained of racial discrimination at a staff meeting over three months before her suspension took effect.

Now pending before this Court is defendant's Motion for Summary Judgment ("Defendant's Motion").[1] (ECF No. 20.) The parties' submissions have been reviewed, and plaintiff has been accorded a period of discovery in this case.[2] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion is GRANTED, and Summary Judgment shall be ENTERED in favor of defendant on both counts.

## BACKGROUND

In ruling on a Motion for Summary Judgment, the Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Yolanda Bowman, an African-American woman, is a certified special education teacher with over twenty years of teaching experience. (ECF No. 1 at ¶¶ 7-8.) In October 2012, Bowman was hired to work as a fifth grade teacher within the Baltimore City Public Schools system. (Bowman Depo., ECF No. 20-3 at 4-5.) She was initially assigned to William Paca Elementary School, but subsequently was transferred to Mary E. Rodman Elementary School ("Rodman") for the 2013/14 academic year. (*Id.*) Michele Broom

---

[1] Also pending is defendant's Motion to Strike Plaintiff's Miscellaneous Correspondence (ECF No. 25). (ECF No. 26.) The Motion to Strike is DENIED, and this Court will consider the exhibits (Ms. Bowman's EEOC file) contained in plaintiff's Miscellaneous Correspondence. As plaintiff has produced her EEOC Charge of Discrimination in this submission, defendant's argument based on plaintiff's failure to exhaust her administrative remedies is unavailing.

[2] The initial Motion to Dismiss was DENIED. (ECF No. 8.)

2

("Broom"), an African-American woman, was the principal of Rodman throughout Bowman's tenure there. (*Id.* at 7.) Nearly all (98%) of the students at Rodman were also African-American. (*Id.*)

During Bowman's first year at Rodman, she taught the third grade and had approximately eighteen (18) students in her class. (ECF No. 20-3 at 6-7.) In her second year at the school, the 2014/15 academic year, Bowman was the only teacher assigned to teach the fifth grade, with forty-two (42) students in her class. (*Id.* at 8, 22.) That same year, a first-year teacher, Ms. Tousignant, a Caucasian female, was assigned to teach the fourth grade class. (*Id.* at 25-26.) It is undisputed that the inexperienced Ms. Tousignant struggled to control her students and that Ms. Bowman, with her extensive teaching background, lent her assistance to Ms. Tousignant. (*Id.* at 25-26.)

When a new teacher joined Rodman during the 2014/15 year, she was assigned to the fourth grade in order to reduce the number of students assigned to the struggling Ms. Tousignant. (*Id.* at 21-22.) After the fourth grade class was divided, Ms. Tousignant was responsible for only fifteen students. (*Id.*) The number of students assigned to Ms. Bowman was unchanged. (*Id.* at 22.) During a staff meeting held on October 13, 2014, Bowman asserted that she felt that the reassignment was unfair and that she was being discriminated against because the school had reduced the number of students assigned to Ms. Tousignant, a Caucasian, but not to Ms. Bowman, an African-American. (*Id.*)

While Bowman testified that she and Principal Broom had a professional relationship prior to the 2014/15 academic year, she now alleges that Broom began treating her with tension and hostility from that start of the school year. (ECF No. 20-3 at 24, 28.)

3

Notwithstanding, it is undisputed that Broom encouraged Bowman to start extracurricular clubs at the school. (*Id.* at 28-29.) Ms. Bowman proposed a "prison pen pal program," through which students in Bowman's class wrote letters to Bowman's husband Mr. Price, a convicted felon who has been incarcerated in federal facilities since 2008 with an expected release date in 2019. (*Id.* at 3, 37.) Given the sensitive nature of this activity, students were required to obtain parental permission slips before communicating with the inmate. (*Id.* at 37.) While some students returned permission slips, several others did not. (*Id.* at 37-41.) Even students who did not return their permission slips participated in the program. (*Id.*)

In December 2014, Price sent to Bowman and the students a very personal letter describing the events that led to his imprisonment and his experience in prison. (ECF No. 20-4.) Following the receipt of Price's letter, on Saturday, December 20, 2014, Bowman sent to the parents of her fifth grade students a text message explaining that as a result of his correspondence with the students, her husband had been placed in solitary confinement. The text message stated:

> "Greetings Mary E. Rodman Family, This is Ms. Bowman. First and for most [*sic*] I want to wish you all a blessed and favorable Christmas. May all your needs be meet [*sic*]. I now have to ask you for a favor. I started a pen pal program with the students in my class and my significant other who is incarcerated. Students received monthly letters which they were excited about and periodic phone calls which we talked [*sic*] on speaker. Permission slips were sent home to avoid confusion. Well, we spoke to Mr. Price as a class on December 11 and I did not here [*sic*] from him again. Last night I received a letter from him stating that he was placed in solitary confinement for saying to the students that he was not a nice guy and that was considered a threat to children. My family is completely devastated by this especially that this happening during the holidays. I am writing the prison to request an immediate investigation and I need your help. First please talk to your children about correspondences with Mr. Price and find out for yourself what was said, then please send me your email address so we can demand an explination [*sic*] from the prison. I'm trying to get 100 letters out my Mon. [*sic*] morning so my children can at least speak to there [*sic*] father on Christmas. Mr.

> Price and I were actually trying to do something positive for our kids as we both move forward in becoming ministers. Thank you for all you do, and I look forward to your email addresses. God's favor on your life!!"

(ECF No. 20-6.) The following Monday, December 22, 2014, multiple parents contacted school administrators to express concern about the unexpected and peculiar text message from Ms. Bowman and about the prison pen pal program as a whole. (ECF Nos. 20-8, 20-9.)

When Principal Broom and school administrators learned of the parents' complaints, they contacted the Baltimore City Public Schools Office of Labor and Relations. (ECF No. 20-8.) By letter dated January 5, 2015, Jerome Jones, Manager of the Office of Labor Relations, notified Bowman that she was being placed on administrative leave with pay pending further investigation into her activities and a *Loudermill* hearing.[3] (ECF No. 20-10.) The *Loudermill* hearing was conducted on January 12, 2015. *See* ECF No. 20-11. Following the hearing, Dr. Gregory Thornton, Chief Executive Officer of the Board, recommended that Ms. Bowman be terminated. (ECF No. 20-12.) By letter dated February 3, 2015, Bowman was placed in a status of suspension without pay effective February 10, 2015. (ECF No. 20-12.) Despite Thornton's recommendation, the Board did not terminate Ms. Bowman's employment immediately, but instead chose not to renew her teaching contract by letter dated May 1, 2015. (ECF No. 20-13.)

While still on administrative leave, on January 29, 2015, Bowman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination based on her race and age. (ECF No. 25 at 11-14.) Following

---

[3] A *Loudermill* hearing, named after *Cleveland Bd. of Educ, v. Loudermill*, 470 U.S. 532 (1985), refers to the opportunity for government employees to be heard prior to termination. *See Coghill v. Bd. of Educ. of Prince George's Cty.*, GJH-14-2767, 2017 WL 1049470, at *9 (D. Md. Mar. 17, 2017), *reconsideration denied,* GJH-14-2767, 2017 WL 2779624 (D. Md. June 23, 2017).

5

its investigation, the EEOC dismissed Bowman's Charge and issued her a Right to Sue letter on February 5, 2015. (*Id.* at 3.) On May 5, 2015, Bowman filed a two-count Complaint in this Court alleging retaliation in violation of Title VI and Title VII. (ECF No. 1.) Defendant timely moved to dismiss Bowman's Complaint. (ECF No. 4.) Accepting as true the factual allegations set forth in the Complaint, this Court denied the Motion to Dismiss by Memorandum Opinion and Order dated March 24, 2016.[4] (ECF Nos. 7-8.)

The parties undertook discovery, and defendant filed its now-pending Motion for Summary Judgment. (ECF No. 20.) After Defendant's Motion became ripe, plaintiff submitted a copy of her EEOC investigative file in order to cure the procedural defect—failure to demonstrate that plaintiff had exhausted the administrative process—identified by defendant in its Motion. (ECF No. 25.) Defendant moved to strike the untimely submission. (ECF No. 26.) As noted above, this Court will consider plaintiff's untimely filed exhibit, as plaintiff's Miscellaneous Correspondence makes clear that plaintiff did file a timely Charge of Discrimination with the EEOC.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, summary judgment is proper "only when no

---

[4] *Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242 (D. Md. 2016).

'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

**ANALYSIS**

Title VI and Title VII claims of unlawful retaliation are examined under the same standard. *Howerton v. Board of Educ. of Prince George's Cty.*, TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015). In evaluating retaliation claims under either statute, courts

7

apply the burden-shifting framework established in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See Adams v. Trs. of the Univ. of N.C.-Wilmington,* 640 F.3d 550, 558 (4th Cir.2011) (Title VII); *Middlebrooks v. Univ. of Md.,* 166 F.3d 1209, 1999 WL 7860, at *5 (4th Cir. Jan.11, 1999) (Title VI). Under this framework, the plaintiff must first establish a *prima facie* case of retaliation. Once the plaintiff establishes her *prima facie* case, the burden shifts to the employer to assert a "legitimate, nondiscriminatory reason" for its adverse employment action. If the employer makes that showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported reasons were a "pretext for discrimination." *See Howerton*, 2015 WL 4994536, at *8.

To establish a *prima facie* claim of retaliation under Title VI or Title VII, a plaintiff must show that "(1) she engaged in protected activity: (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).[5] In this case, it is undisputed that Bowman suffered an adverse employment action. However, the Board argues that she is unable to establish (1) that she engaged in a protected activity or (2) that there exists a causal connection between her alleged protected activity and her suspension. (ECF No. 20-1 at 11.)

**A. Bowman Did Not Engage in Protected Activity**

Protected activity includes an employee's opposition to what he or she believes is an unlawful employment practice. This opposition encompasses "utilizing informal grievance

---

[5] In addition, retaliation claims under Title VI require the plaintiff to show that "the program or activity under which a plaintiff was allegedly subjected to discrimination received federal financial assistance." *Rogers v. Bd. of Educ. of Prince George's Cty.*, 859 F. Supp. 2d 742, 750 (D. Md. 2012).

8

procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). The Fourth Circuit has noted that while individual acts may be scrutinized to determine "their nature, purpose, and nexus to the alleged objective," the plaintiff's conduct must be examined "as a whole." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). This inquiry first looks to whether the employee "communicates to her employer a belief that the employer has engaged in…a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 555 U.S. 271, 276 (2009). If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is "actually unlawful under Title VII" or that the employee "reasonably believes to be unlawful." *Boyer–Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 282 (4th Cir. 2015).

In support of its Motion, the Board contends that Bowman is unable to establish that she engaged in a protected activity. (ECF No. 20-1 at 11-12.) Specifically, the Board asserts that Bowman "had no basis to reasonably believe that BCBSC's conduct was unlawful, either objectively or subjectively." (*Id.* at 12.) Bowman argues in opposition that she engaged in a protected activity when she asserted at the October 2014 staff meeting that the reduction in the number of students assigned to Ms. Tousignant was discriminatory. (ECF No. 21 at 26.)

The only evidence which Bowman produces to show that she ever complained of discrimination is an unisgned self-serving affidavit.[6] (ECF No. 21-1 at ¶ 49.) It is well

---

[6] This Court notes that an unsigned, unsworn affidavit is not admissible evidence which may be used in opposition to a Motion for Summary Judgment. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n. 17. (1970); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

established that "[a] plaintiff's self-serving affidavit is not sufficient to withstand summary judgment." *Jones v. Puffenbarger*, CCB-15-3137, 2017 WL 1020819, at *15 (D. Md. Mar. 15, 2017) (citing *National Enterprises, Inc. v. Barnes*, 201 F3d 331, 335 (4th Cir. 2000)). Nor, moreover, can it be said that Bowman's alleged statement was made in response a discriminatory action by the Board. That is, Bowman could not have reasonably believed that the school's decision to assign fewer students to a first-year teacher struggling with her large class size constituted unlawful discrimination. Thus, plaintiff fails to establish a *prima facie* case that she engaged in protected activity under Title VI or Title VII. Accordingly, summary judgment must be entered in favor of the Board on both counts.

### B. Even if Bowman Had Engaged in Protected Activity, There is No Causal Connection Between That Activity and Her Suspension

Even if Bowman were able to establish that her alleged comment at the October 23, 2014 staff meeting constitutes a legally protected activity—which it does not—she is unable to show that there is a causal connection between this purportedly protected activity and the adverse employment actions taken against her.

It is well established that a plaintiff alleging unlawful retaliation must show that there exists a "but-for" connection between the protected activity in which she engaged and the adverse employment action which she suffered. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Although a plaintiff may not conclusorily assert the existence of a "causal connection," the presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). If the

10

employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (explaining that the employer must know the employee engaged in protected activity as a prerequisite to establishing a causal connection). The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascaul v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal citation omitted).

Defendant asserts that the agents of the Board who made the decisions regarding plaintiff's suspension and, subsequently, non-rehiring had no knowledge of plaintiff's purported protected activity. (ECF No. 20-1 at 15-17.) The Board further asserts that even if it could be shown that its agents had knowledge of the protected activity, the protected activity was not the "but-for" cause of Bowman's suspension and non-rehiring. (*Id.*)

Plaintiff, paying no heed to the Board's stated reasons for suspending her—that is, the failure to obtain parental consent forms from some of the students who participated in the prison pen pal program and her strange, December 20, 2014 text message—argues that the causation element of her retaliation claim is satisfied because school administrators conducted observations of her classroom within a few days of Bowman's purported October 23 statement about discrimination. (ECF No. 21 at 27.) After having had a period of discovery in this case, Bowman is unable to show that the agents of the Board who were responsible for decisions regarding her employment had any knowledge of her purportedly protected activity.

The undisputed evidence before this Court indicates that decisions regarding Bowman's placement on administrative leave, suspension, and non-rehiring were made by Board administrative personnel who were neither present nor aware of Bowman's comments. (Jones Aff., ECF No. 20-2.) Crucially, moreover, Bowman is unable to show that her alleged protected activity was the "but-for" cause of her suspension and, later, non-rehiring. To the contrary, the undisputed evidence before this Court indicates that the adverse employment actions which Bowman suffered were the result of her failure to obtain parental consent before having students participate in the prison pen pal program. (ECF No. 20-12.) Thus, even if Bowman were able to show that she had engaged in protected activity—which she is not—she is unable to show that there was any causal connection between that activity and the adverse employment actions which she suffered. Thus, plaintiff is unable to establish a *prima facie* case of retaliation, and summary judgment must be entered in favor of the Board on both counts.

### C. Bowman Has Produced No Evidence Of Pretext

Even though Bowman has not established a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Bowman nevertheless seeks to survive Defendant's Motion by speculative assertions that the Board's decision to terminate her was pretextual. (ECF No. 21 at 28.) Plaintiff's assertions about Principal Broom's alleged adverse "observations" and Bowman's "ineffective" teacher ratings are unsupported by admissible—or even inadmissible—evidence. It is well established that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Accordingly, even if the argument

were properly presented within the *McDonnell Douglas* framework—which it is not—plaintiff is unable to "save" her claims by her suggestion that the Board's decision to suspend her was pretextual.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 20) is GRANTED, and Summary Judgment shall be ENTERED in favor of defendant on both counts.

A separate Order follows.

Date: August 11, 2017 _____/s/_____
Richard D. Bennett
United States District Judge